PEOPLE v DRAPER

Docket No. 80191. Submitted December 3, 1985, at Lansing.—Decided
April 8, 1986. Leave to appeal applied for.

Timothy P. Draper was convicted of first-degree criminal sexual
conduct by a jury in Bay Circuit Court and was sentenced to
from 20 to 50 years in prison, William J. Caprathe, J. Defen-
dant appealed. *Held:*

1. The trial court did not err in admitting evidence of
statements made by the victim, defendant's three-year-old step-
daughter, to her physician. The evidence was properly admitted
under the excited utterance exception to the hearsay rule.

2. The trial court did not abuse its discretion in admitting
expert testimony on the matter of what indicators are used in
the field of psychology to determine whether a child has been
sexually abused. The expert witness testimony was properly
admitted.

3. The trial court did not abuse its discretion by finding that
the three-year-old victim was competent to testify.

4. The trial court did not err in refusing to instruct the jury
on the cognate lesser-included offense of assault with intent to
commit criminal sexual conduct. Defendant argued that he had
never engaged in any sexual conduct with his stepdaughter.

5. The trial court did not consider defendant's failure to
admit guilt in imposing sentence.

6. Defendant's contention that resentencing is necessary

REFERENCES

Am Jur 2d, Criminal Law §§ 266 *et seq.,* 525 *et seq.*

Am Jur 2d, Evidence §§ 708 *et seq.*

Am Jur 2d, Expert and Opinion Evidence §§ 1 *et seq.*

Am Jur 2d, Witnesses §§ 134 *et seq.*

Propriety of, or prejudicial effect of omitting or of giving, instruc-
tion to jury, in prosecution for rape or other sexual offense, as to
ease of making or difficulty of defending against such a charge. 92
ALR3d 866.

Time element as affecting admissibility of statement or complaint
made by victim of sex crime as res gestae, spontaneous exclama-
tion, or excited utterance. 89 ALR3d 102.

See also the annotations in the ALR3d/4th Quick Index under
Expert and Opinion Evidence; Witnesses.

because the trial court departed from the sentencing guidelines and failed to give substantial reasons for the departure is rejected. The trial court's stated reasons for imposing sentence were adequate and the sentence does not shock the judicial conscience.

Affirmed.

1. Eᴠɪᴅᴇɴᴄᴇ — Hᴇᴀʀsᴀʏ — Exᴄɪᴛᴇᴅ Uᴛᴛᴇʀᴀɴᴄᴇs.

A statement must meet three criteria to come within the excited utterance exception to the hearsay rule: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion (MRE 803[2]).

2. Wɪᴛɴᴇssᴇs — Exᴘᴇʀᴛ Tᴇsᴛɪᴍᴏɴʏ — Aᴘᴘᴇᴀʟ.

The decision to allow expert testimony on a given issue is left to the trial court's discretion and will not be reversed on appeal absent a clear abuse of discretion.

3. Wɪᴛɴᴇssᴇs — Cᴏᴍᴘᴇᴛᴇɴᴄʏ ᴏғ Wɪᴛɴᴇssᴇs — Aᴘᴘᴇᴀʟ.

A trial court's decision that a person is competent to testify is reviewable only to determine whether there was an abuse of discretion.

4. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Lᴇssᴇʀ Iɴᴄʟᴜᴅᴇᴅ Oғғᴇɴsᴇs — Jᴜʀʏ Iɴsᴛʀᴜᴄᴛɪᴏɴs.

A defendant is entitled to a jury instruction on a lesser included offense only if the evidence introduced at trial would justify the jury in concluding that the lesser offense, and not the greater charged offense, was committed.

5. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Sᴇɴᴛᴇɴᴄɪɴɢ.

A defendant's refusal to admit guilt of the crime charged, either before or after conviction, is not a proper factor in setting sentence.

6. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Sᴇɴᴛᴇɴᴄɪɴɢ — Aᴘᴘᴇᴀʟ.

The Court of Appeals will not reverse a defendant's sentence where the trial court's stated reasons for imposing the sentence are adequate and the sentence does not shock the judicial conscience.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Stuart Lev*), for defendant on appeal.

Before: CYNAR, P.J., and WAHLS and GRIBBS, JJ.

PER CURIAM. Following a jury trial in Bay County Circuit Court defendant was convicted of first-degree criminal sexual conduct, MCL 750.520(b)(1)(a); MSA 28.788(2)(1)(a). The victim in this case is defendant's stepdaughter, Heidi, who was three years old at the time the charged offense occurred. Defendant was sentenced to from 20 to 50 years and now appeals as of right.

The trial court determined that Heidi was competent to testify. Anatomically correct dolls were used during the direct examination of Heidi. The prosecutor asked Heidi if defendant had hurt her and directed the child to point to the area on the doll. Heidi responded "yes" and pointed to the vaginal area. Defense counsel argued that the prosecutor had helped Heidi point to that area. The prosecutor denied that she helped the child. Heidi was then asked where defendant had hurt her and Heidi touched the penis and finger of the male doll. Heidi testified that defendant hurt her, she cried and said, "I bleeded".

On cross-examination Heidi stated that she had informed her mother and grandmother about defendant's behavior. She also stated that her "pee-pee" itched sometimes and she scratched it. A rocking horse was shown to Heidi. She indicated that she had never had an accident on the rocking horse.

Ms. Jalovaara, a master level psychologist, testified that she examined Heidi on September 29, 1983. She said that several tests were used in evaluating Heidi: (1) McCarthy Scales of Children's Abilities, (2) Vineland Social Maturity Scales, (3)

Extended Action Agent Vocabulary Tests, (4) Peabody Picture Vocabulary Test, and (5) Diagnostic Play Session. Jalovaara explained that these tests were generally recognized in the field of psychology as being methods of evaluating children in Heidi's age range. According to Jalovaara, indicators of sexual abuse of children among Heidi's age range were the ideation of the child's play, masturbation, and fear of sexual matters. She testified that she observed Heidi spontaneously roll Play-doh into long cylindrical pieces and say "that's my daddy's pee-pee". Heidi then used the Play-doh to imitate a sexual act. Jalovaara felt Heidi was overly preoccupied with sexual matters for a child of her age. She stated that Heidi told her, "He put his pee-pee in my pee-pee. That wasn't nice." Jalovaara opined that Heidi's behavior was consistent with behavior of a child who had been sexually abused. After evaluating Heidi, Jalovaara concluded that Heidi believed that she had been sexually abused.

Dr. Knobloch, Heidi's pediatrician, testified that he examined the child on September 16, 1983. During the examination he found a quarter of an inch tear in Heidi's hymen. He stated that this tear probably occurred approximately one week before the examination. Heidi was examined on August 25, 1983, for a urinary tract infection and Dr. Knobloch had not observed the tear at that time. The doctor stated that Heidi's behavior during the September 16, 1983, examination was different from previous examinations in that she seemed fearful. Heidi was normally outgoing. The doctor opined that the tear in Heidi's hymen was not self-induced and that the tear could have been caused by penetration with a finger. He further opined that it was not possible for an adult penis to penetrate the vagina of a child Heidi's age. The

doctor also thought that it was unlikely that the tear had resulted from some type of accident, such as a fall from a rocking horse, because accidents normally caused a tear in the labia rather than in the hymen.

Janice Kiersey, age 16, lived with and babysat for defendant and his wife, Heidi's mother. Kiersey testified on behalf of defendant and stated that in the summer of 1983 she saw Heidi fall on her rocking horse. When she subsequently gave Heidi a bath, she did not notice any bleeding. Approximately one month later she observed Heidi placing the tip of a pencil eraser in her vagina.

Defendant testified that he never sexually abused Heidi.

In rebuttal, the prosecution recalled Dr. Knobloch. The doctor testified that it was not possible that a fall on the rocking horse caused Heidi's injury. However, he stated that the hymen could have been torn by a child inserting a pencil in the vagina.

Defendant raises six issues on appeal, none of which require reversal.

First, defendant argues that the trial court erred in admitting evidence of statements made by Heidi to her physician on the basis that the evidence constituted hearsay.

Heidi's foster mother, Linda Fisher, testified concerning statements made by Heidi during a medical examination. She explained that as Dr. Knobloch proceeded to examine Heidi to determine the cause of redness and swelling around her vaginal area, Heidi screamed, "Don't hurt me, don't hurt me, Tim don't hurt me; Daddy, don't hurt me." She further testified that when Dr. Knobloch examined Heidi's rectum, he put cream on his glove and Heidi started to scream, "Daddy, don't make me bleed." Over defendant's objection,

the trial court ruled that the statements were not inadmissible hearsay because they came under the "excited utterance" and the medical treatment exceptions to the hearsay rule, MRE 803(2) and MRE 803(4).

We believe that the trial court did not abuse its discretion in admitting these statements into evidence on the basis that under MRE 803(2) the statements fall within the excited utterance exception to the hearsay rule. Reversal is therefore not required on this point. See *People v Petrella,* 124 Mich App 745, 758; 336 NW2d 761 (1983).

In *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979), our Supreme Court set forth the following criteria for the excited utterance exception to the hearsay rule:

"To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion." (Footnote omitted; citations omitted.)

Defendant argues that the above-cited criteria were not met in this case. We disagree. The statements made and the actions taken by the three-year-old victim of the sex crime in this case were clearly the product of a startling event, the sexual abuse of the child by her stepfather. The statements were spontaneous, *i.e.,* not prompted by any questioning. We believe that the event was sufficiently startling to have created excitement lasting for one week, the time which lapsed between the event and the medical examination of the child. The statements were therefore properly admitted under the excited utterance exception to the hearsay rule. *People v Lovett,* 85 Mich App 534; 272

NW2d 126 (1978); *People v Cobb,* 108 Mich App 573; 310 NW2d 798 (1981).

Defendant argues that the trial court abused its discretion in admitting expert testimony.

Jalovaara and Linda Butterfield, both psychologists, testified in this case. Prior to their testifying, the witnesses were questioned about their training and expertise. Each witness was qualified by the court as an expert witness and was permitted to testify about the characteristics that indicate that a child has been sexually abused.

Defendant contends that the trial court abused its discretion in allowing the experts to testify on the indicators of a sexually abused child. Defendant asserts that under MRE 702 an insufficient foundation was laid concerning the recognized specialized knowledge in the diagnosis of a sexually abused child.

MRE 702 provides:

"If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The decision to allow expert testimony on a given issue is left to the trial court's discretion and will not be reversed on appeal absent a clear abuse of discretion. *Independence Twp v Skibowski,* 136 Mich App 178; 355 NW2d 903 (1984), *lv den* 422 Mich 853 (1985); *Strzelecki v Blaser's Lakeside Industries of Rice Lake, Inc,* 133 Mich App 191; 348 NW2d 311 (1984). Our review of the record in this case convinces us that the trial court did not abuse its discretion in admitting expert testimony

on the matter of what indicators are used in the field of psychology to determine whether a child has been sexually abused. Both witnesses were questioned extensively about their training and experience, which was adequate to qualify them as experts in the field of psychology. Their testimony concerning the characteristics normally found in sexually abused children assisted the jury in understanding the evidence. Also, the practice of psychology is a field where knowledge belongs more to experts than to the common man. The challenged expert witness testimony was therefore properly admitted under MRE 702. *Cook v City of Detroit,* 125 Mich App 724, 735; 337 NW2d 277 (1983).

Defendant argues that the trial court erred in finding that the three-year-old victim was competent to testify.

Generally, every person is competent to be a witness in this state unless the court finds after questioning a person that he does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably. MRE 601. A trial court's decision that a person is competent to testify is reviewable only to determine whether there was an abuse of discretion. *Cobb, supra,* p 575. The record in this case supports the trial court's conclusion that the three-year-old victim was competent to testify. Hence, the trial court did not abuse its discretion.

Defendant's next argument involves the trial court's refusal to instruct the jury on the cognate lesser-included offense of assault with intent to commit criminal sexual conduct, MCL 750.520g(1); MSA 28.788(7)(1). The defendant was entitled to a jury instruction on assault with intent to commit CSC only if the evidence introduced at trial would justify the jury in concluding that the lesser of-

fense, and not the greater charged offense, was committed. *People v Adams,* 416 Mich 53; 330 NW2d 634 (1982); *People v Gregory Thomas,* 38 Mich App 777, 779; 197 NW2d 97 (1972).

Defendant requested a jury instruction on the lesser-included offense of assault with intent to commit CSC. Relying on *Adams, supra,* the trial court refused to give the requested jury instruction. Our review of the record convinces us that the trial judge acted properly. Defendant did not argue that he had attempted, but not completed, the criminal sexual conduct. Instead, defendant argued that he never engaged in any sexual conduct with Heidi. Defendant also argued that Heidi had been injured as a result of an accident where she fell off a rocking horse. The testimony of Dr. Knobloch, who examined Heidi after the alleged event, indicates that due to the child's age the tear in her hymen probably did not occur as a result of defendant inserting his penis into the child. The doctor, however, also testified that the tear in Heidi's hymen was not self-induced and probably resulted from the insertion of some object, such as a finger, into the child's vagina.

Defendant argues that the trial court improperly considered defendant's refusal to admit guilt in imposing sentence in this case.

It is well settled in Michigan that the defendant's refusal to admit guilt of the crime charged, either before or after conviction, is not a proper factor in setting sentence. *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). The proper criteria for determining an appropriate sentence were set forth by our Supreme Court in *People v Snow,* 386 Mich 586; 194 NW2d 314 (1972). The trial court in this case discussed each of the *Snow* criteria before imposing sentence.

The court concluded that, because defendant

posed a threat to society, the need to protect society was great. The court also concluded that defendant should be sentenced to a long prison term so that others would know that similar criminal behavior would not be tolerated. Hence, the trial court imposed the sentence to deter others from committing like offenses. The court noted that the sexual crime perpetrated by defendant had a serious and longlasting effect on Heidi. Hence, it is apparent that the trial court imposed sentence to punish defendant for his wrongdoing.

The trial court also concluded that the potential for reformation or rehabilitation of defendant was doubtful. The court's conclusion was based on the fact that defendant failed to accept responsibility for his criminal conduct. Relying on the court's statements concerning accepting responsibility, defendant contends that the trial court essentially considered his refusal to admit guilt as a factor in imposing sentence.

The trial court never stated that defendant would get a lighter sentence if he admitted that he was guilty. The trial court stated on the record that it recognized defendant's right to maintain his innocence throughout the trial and "forever". We conclude that the trial court did not consider defendant's failure to admit guilt in imposing sentence in this case.

Defendant contends that resentencing is required in this case because the trial court departed from the sentencing guidelines and failed to give substantial reasons for the departure. The sentence imposed in this case will not be reversed absent an abuse of discretion to the extent that the sentence shocks the judicial conscience. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

The trial court's stated reasons for imposing

sentence in this case, discussed above, were adequate and the sentence does not shock the judicial conscience. Defendant is therefore not entitled to resentencing.

Affirmed.