PEOPLE v LEE

Docket No. 91332. Submitted April 8, 1987, at Grand Rapids. Decided
June 6, 1989. Leave to appeal applied for.

Robert D. Lee was convicted of first-degree criminal sexual con-
duct, Kent Circuit Court, George R. Cook, J., and appealed,
alleging error in allowing the mother of the seven-year-old
victim to testify to statements concerning the crime made by
the victim to her seventeen days after the fact.

The Court of Appeals *held:*

The testimony was improperly admitted. There is no tender
years exception to the hearsay rule in Michigan and the
statements did not qualify as excited utterance.

Reversed.

Weaver, P.J., dissented. She agreed that the statements were
not excited utterances, but would hold that admission of testi-
mony concerning them was harmless error because it was
cumulative of the victim's in-court testimony. She would affirm.

1. Evidence — Hearsay — Excited Utterance Exception — Rules
of Evidence.

A statement must meet three criteria to come within the excited
utterance exception to the hearsay rule: the statement must (1)
arise out of a startling occasion, (2) be made before there has
been time to contrive and misrepresent, and (3) relate to the
circumstances of the startling occurrence (MRE 803[2]).

2. Evidence — Hearsay — Tender Years Exception — Rules of
Evidence.

The tender years exception to the hearsay rule no longer exists
under the Michigan Rules of Evidence.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *David H. Sawyer,* Prose-

References

Am Jur 2d, Evidence §§ 708 *et seq.*

When is hearsay statement an "excited utterance" admissible un-
der Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed
451.

cuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*Catchick & Dodge* (by *David A. Dodge*), for defendant.

Before: WEAVER, P.J., and HOLBROOK, JR. and T. GILLESPIE,* JJ.

HOLBROOK, JR., J. Defendant was convicted by a jury of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), arising out of the sexual penetration of his seven-year-old daughter. He was sentenced to six to twenty years in prison. Defendant's motion for new trial was denied and he appeals as of right, claiming that the trial court erred in admitting the hearsay testimony of the victim's mother under MRE 803(2), the hearsay exception for excited utterances. The mother testified that on May 6, 1985, seventeen days after the alleged incident, the victim told her that defendant had penetrated the victim's rectum.[1] We agree that the testimony was improperly

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1]

*Q.* Could you go back in time, ma'am, and I believe it was May 5. Was that the date?

*A.* May 6th.

*Q.* And then you reported it the 7th, but could you tell us under what conditions you first learned about this particular event?

*A.* Well, we were watching TV . . .

\* \* \*

*A.* [My son] passed some gas, and then he started laughing about it, and I said it wasn't funny, and then he told me, "Well, I will plug my butt with my finger so that I can't do it no more," and I said, "Where did you hear something like that?", and then he told me from his dad, and I said, "Why would he say something like that?", and then [the victim] had overheard this from her bedroom and come out and . . .

*The Court:* I can't hear you.

*By Mr. Zerial:*

*Q.* The Judge can't hear you, okay?

admitted and reverse defendant's conviction.

MRE 803(2) allows an out-of-court statement of a declarant to be admitted if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

In *People v Gee,* 406 Mich 279; 278 NW2d 304 (1979), the Supreme Court set forth three requirements that must be met before a statement comes within the excited utterance exception:

> To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion. *People v Cunningham,* 398 Mich 514, 519; 248 NW2d 166 (1976), citing *Rogers v Saginaw B C R Co,* 187 Mich 490, 493-494; 153 NW 784 (1915). [*Gee, supra,* p 282.]

See also *People v Straight,* 430 Mich 418; 424 NW2d 257 (1988).

In *People v Kreiner,* 415 Mich 372; 329 NW2d 716 (1982), reh den 417 Mich 1104 (1983), the Supreme Court rejected the common-law "tender years" exception to the hearsay rule[2] and affirmed application of the *Gee* criteria to cases involving the utterance of a child of "tender years":

> *The Court:* Would you read that last answer back?
>
> (Last answer read back by the reporter at this time.)
>
> *The Witness:* She had come out and she says, "Yes, he did, Mom," and I said, "Yes, he did what?" She says, "Probably told him that." I said, "Why?", and she says, "Because he did it to me." I said, "He did what to you?", and she had told me that he had stuck his peter up her butt.

[2] The "tender years" exception permitted the hearsay testimony only to corroborate the testimony of the infant victim. *Kreiner, supra,* p 376.

If the utterance of a child of "tender years" relates to a "startling event or condition" and was made while the child was "under the stress of excitement caused by the event or condition," the statement may be admitted as an excited utterance under MRE 803(2). See *People v Cobb,* 108 Mich App 573 [310 NW2d 798] (1981). On the other hand, if these requirements are not met, the mere fact that the declarant is of "tender years" and makes a statement in a sex-related case does not provide a basis for admitting the statement under the so-called "res gestae" exception. 61 Mich Bar J 332. [*Kreiner, supra,* p 379, n 8.]

In the instant case the trial court admitted the hearsay statements concluding:

I am going to rule that because of the relationship of the defendant and the complainant and the tender years of the victim, that the criteria have been met and the testimony will be allowed under the spontaneous utterance exception to the hearsay rule.

We disagree, first noting that the court disregarded the *Kreiner* holding which rejected the "tender years" exception. Second, we find the seventeen-day lapse between the sexual assault and the statement by the victim was a significant delay precluding a finding that the statement was made before there was time to contrive and misrepresent. Further, there was no plausible excuse for the delay especially since it appears that the victim had previous opportunities to relate the incident to her mother. See *Gee, supra,* p 283. Hence we conclude that the trial court abused its discretion in allowing the hearsay testimony. *People v Petrella,* 124 Mich App 745, 758; 336 NW2d 761 (1983).

We reject the prosecutor's contention that *Peo-*

*ple v Soles,* 143 Mich App 433; 372 NW2d 588 (1985), lv den 424 Mich 863 (1985), is applicable. We find that case distinguishable on the basis of the heinous nature of the assault, the seriousness of the victim's injuries and the resulting shock. This Court concluded that the shock was of such a duration as to permit the statements as excited utterances. Here, the victim was neither seriously injured nor exhibited shock. In fact, the day after the incident she was playing.

Finally, we do not find that the error was harmless. The controlling question was the parties' credibility and any corroborating evidence on either side could tip the scales. See *Gee, supra,* p 283.

Reversed.

T. GILLESPIE, J., concurred.

WEAVER, P.J. *(dissenting).* I dissent.

Although I agree with my colleagues that the trial court erred in admitting the hearsay testimony of the victim's mother under MRE 803(2), the hearsay exception for excited utterances, I disagree with their reasoning.

### EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE.

*People v Gee,* 406 Mich 279; 278 NW2d 304 (1979), sets forth the three criteria for admission of a statement into evidence as an excited utterance under MCR 803(2): (1) the statement must arise out of a startling event; (2) it must be made before there is time for contrivance or misrepresentation;

and (3) it must relate to the circumstances of the startling event. 406 Mich 282. In this case the victim's hearsay statement to her mother related to the circumstances of the event and was made before there was time for contrivance or misrepresentation. However, because the event itself was not startling to the child it cannot qualify the statement as an excited utterance. Even so, I would affirm. Improper admission of the testimony was harmless error because cumulative to the victim's own in-court testimony.

### 1. AGE OF CHILD AS A FACTOR IN DETERMINING TIME FOR CONTRIVANCE AND MISREPRESENTATION.

Even though the seven-year-old child's statement to her mother was not an excited utterance voiding application of the hearsay rule, it is important to recognize that the seventeen-day delay in reporting the incident did not of itself preclude a finding that the statement was made before there was time to contrive and misrepresent. *People v Kreiner,* 415 Mich 372; 329 NW2d 716 (1982), which found that the "tender years" exception to the hearsay rule did not survive the adoption of the Michigan Rules of Evidence, did not require that the age of the declarant be ignored when determining whether the statement was made before enough time had passed for contrivance or misrepresentation. *People v Foreman,* 161 Mich App 14, 20-21; 410 NW2d 289 (1987). Indeed, mental deficiencies or a child's young age are legitimate factors to be considered when analyzing whether a declarant had time to or may have contrived the statement, and analysis employing these factors may properly lead to the conclusion

that the passage of days or weeks would not negate the statement's spontaneity. *Id.*[1]

In this case, the victim's statement was not delayed long enough to make contrivance or misrepresentation likely or of high probability. The child's statement to her mother that the defendant "stuck his peter up her butt" was an obviously spontaneous, unsolicited attempt to verify her brother's assertion that his father had given him the idea of plugging his butt with his finger in order to stop passing gas. It would be difficult for anyone, especially a seven-year-old child, to fabricate and play out this scenario.

### 2. FAILURE OF STATEMENT TO ARISE OUT OF A STARTLING EVENT.

Even though the victim's statement to her mother was not delayed long enough to make contrivance or misrepresentation likely or of high probability, the statement cannot qualify as an excited utterance exception to the hearsay rule because it did not arise out of an event startling to the child either at the time the event occurred or at the time the statement was uttered.

---

[1] In *Foreman, supra* at 20-21, this Court stated:

The criterion most commonly at issue in cases involving MRE 803(2), and the only criterion we find at issue here, is the second one, which requires that the statement be made before enough time has passed for contrivance or misrepresentation. In analyzing whether a declarant had time to or may have contrived the "spontaneous" statement, the age and mental abilities of the declarant, as well as the startling event, are natural considerations. For some declarants, the passage of one minute between a startling event and a related statement may be enough to disqualify the statement as an "excited utterance." For other declarants, such as those of young age or with mental deficiencies, the passage of days or weeks may not negate the spontaneity of a statement. A distinction must be made between admission of hearsay merely because of the tender age of the declarant, which would be error, and admission based on circumstances showing a low probability that the hearsay statement was contrived or misrepresented.

The child did not make the statement because the sexual activity seemed startling or was of concern to her. She was not aware of its shocking nature, nor was she fearful or terrorized. Her statement was made innocently in support of her brother. But for her brother's strange solution for stopping the passage of gas, it is probable that the child would not have revealed the sexual incident at this point in time because she was acting with no awareness of wrongdoing. Her usual behavior remained unaffected. Her father told her that what they had done was alright, that she should not tell anyone, and that if she told her mother she would be unable to visit him again. Because she trusted her father and wanted to see him, and because she did not yet understand that there was anything wrong with the sexual activity, the child believed her father and obediently said nothing. For such a chid the incident, if not repeated, might disappear from conscious thought for months or even years until her worldly knowledge increased to the point of realizing that the sexual activity with her father had been wrong.

Because the hearsay statement was not an excited utterance arising out of activity startling to the declarant either at the time the incident occurred or at the time the statement was pronounced, but rather was a statement made by the declarant to support her brother, it was not admissible under MRE 803(2). I believe that this conclusion clearly demonstrates the need for the establishment of a "tender years" exception to the hearsay rule.

### CUMULATIVE TESTIMONY: HARMLESS ERROR.

The above analysis explains why the excited utterance exception to the hearsay rule was un-

available in this case. Hence it is clear that the trial court erred in admitting the challenged testimony. However, the error was harmless because the mother's testimony was cumulative, see MRE 403, to the child's own in-court testimony which was itself credible and convincing beyond a reasonable doubt.

It is true that upon cross-examination the child's testimony contained memory lapses and inconsistencies as to some details about times and activities of the weekend visitation during which the sexual assault occurred. As to actual description of the criminal sexual activity between her father and herself, however, the child's testimony was detailed and convincing. Fellatio and cunnilingus are not normally within the knowledge, imagination or activity of a seven-year-old child.[2] To know

---

[2] The critical part of the child's testimony concerning fellatio and cunnilingus, elicited during the assistant prosecutor's questioning of the child while using anatomically correct dolls, includes the following:

*Q.* Okay. Now, what do you do after you finish sitting on his stomach?

*A.* He tells me to do this.

*Mr. Dodge:* Your Honor, I don't believe, in the doll's position, that it was sitting on his stomach. It looked like it was lying— one doll was lying on top of another. Can't the witness just answer and the prosecutor leave it where it is?

*Mr. Zerial:* I didn't say anything.

*The Court:* The jury can observe, number one, what she said and where she positioned the dolls, but that's a jury question.

*By Mr. Zerial:*

*Q.* . . . after all of this time, this long time went by, what do you do next and what does Dale do next?

*A.* We get up in the morning.

*Q.* Pardon me?

*A.* We get up in the morning.

*Q.* Now, did he do anything else to you?

*A.* Yes.

*Q.* What else did he do to you?

*A.* He told me to do this, if I can do it.

*Q.* He told you what?

*A.* To push down.

*Q.* To push down. Did you push down?

about and describe in detail such sexual activity,
the child would have had to experience or witness
it first hand or be taught about it. Young children
rarely view this activity on television or read
about it in books. It would be extremely difficult
for a seven-year-old, in a courtroom setting and

*A.* He pushed me to push down.

*Q.* He pushed you?

*A.* He went like this to push me down.

*Q.* I can hold.

*A.* He told me to push down on there, and it started hurting.

*Q.* Where did it hurt you?

*A.* Right there and here.

*Q.* It hurt both places?

*A.* Yes.

*Q.* Do these two places have different names?

*A.* Yes.

*Q.* What are the names? Now, I am going to try to . . .

*A.* Butt and potty.

*Q.* Potty. They are different, right?

*A.* Yes.

*Q.* And they hurt both places?

*A.* Yes.

*Q.* What did you do or say when you were hurting in both of those places?

*A.* I said I don't want to do it any more.

*Q.* And did Dale say anything or do anything after you told him that?

*A.* Yes.

*Q.* What did he say or do?

*A.* Then he told me to—let's see if I can do it.

*Q.* Tell me to move my hand. I am just holding it there. What did he tell you to do next?

*A.* If I can do it. Get it in there. To suck on his peter, and then he started rubbing right there and it hurt.

\* \* \*

*Q.* Now, how do you know you hurt on the inside?

*A.* Easy.

*Q.* How was it so easy?

*A.* Because it was hurt.

*Q.* Did you suck on his peter?

*A.* He told me to.

*Q.* And that means the peter went inside your mouth?

*A.* Yes.

*Q.* Now, what happens—what do you do after you sucked on his peter and he rubbed your potty and your butt and it hurt?

subject to cross-examination, to lie convincingly about experiencing fellatio and cunnilingus, and it is highly improbable that the child could do so.

The mother's hearsay testimony was merely cumulative to the child's own in-court testimony, which was sufficiently credible and convincing that all reasonable jurors would have found guilt beyond a reasonable doubt even had the court not admitted the challenged testimony. Therefore admission of the testimony was harmless error and the conviction should stand. MCR 2.613(A); *People v Christensen,* 64 Mich App 23, 32-33; 235 NW2d 50 (1975), lv den 397 Mich 839 (1976).

I would affirm.